UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK DONOVAN,<br><br>                       Plaintiff,<br><br>-against-<br><br>RITE AID OF NEW YORK, INC. and DAVID HARPER, Individually,<br><br>                       Defendant(s). | Civil No.: 13-cv-2937-KBF<br><br>Hon. Katherine B. Forrest, U.S.D.J. |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON THE PRECLUSIVE EFFECT OF THE CLASS ACTION SETTLEMENT AGREEMENT, ORDERS AND MEMORANDA ENTERED IN THE CASE ENTITLED *SHIRLEY CRAIG, et al. v. RITE AID CORPORATION, et al.,* 4:08 CV-02317-JEJ (M.D. PA. filed Dec. 29, 2008)**

---

                                          **EPSTEIN BECKER & GREEN, P.C.**
                                          250 Park Avenue
                                          New York, New York  10177
                                          Tel. (212) 351-4500

                                          One Gateway Center
                                          Newark, New Jersey 07102-5003
                                          (973) 642-1900
                                          Fax: 973-642-0099
                                          Attorneys for Defendants Rite Aid of New York, Inc. and David Harper

Patrick G. Brady, Esq.
       Of Counsel and on the Brief

Laura A. Stutz, Esq.
       On the Brief

FIRM:23975964v1

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

RELEVANT HISTORY ........................................................................................................3

    A.    The Rite Aid Classification Litigation and Settlement ............................................3

        i.    The *Craig* Action ..................................................................................3

        ii.    The *Ibea* Action ....................................................................................4

        iii.    The Consolidation and Court-Approved Class Settlement ..................5

    B.    This Action ..............................................................................................................10

ARGUMENT .........................................................................................................................12

    I.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF ALL DEFENDANTS ON ALL COUNTS AS A MATTER OF LAW ...............12

        A.    Standard For Summary Judgment ..............................................................12

        B.    Plaintiff is Precluded From Asserting His Claims Under the *Craig* Final Approval Order and Court-Approved Settlement Agreement ..........12

            i.    The Doctrine of *Res Judicata* Bars Plaintiff's Claims ..................12

            ii.    The Doctrine of Release Bars Plaintiff's Claims ..........................15

CONCLUSION ......................................................................................................................17

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Allen v. McCurry,*
   449 U.S. 90 (1980).................................................................................................12

*Anderson v. Beland,*
   672 F.3d 113 (2d Cir. 2011)....................................................................................13

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)................................................................................................12

*County of Suffolk v. Long Island Lighting Co.,*
   907 F.2d 1295 (2d Cir. 1990)..................................................................................13

*Crawford v. Franklin Credit Management Corp.,*
   2011 WL 1118584 (S.D.N.Y. Mar. 23, 2011).........................................................12

*Hansberry v. Lee,*
   311 U.S. 32 (1940)..................................................................................................13

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
   261 F.3d 355 (3d Cir. 2001)...............................................................................15, 16

*Knight v. U.S. Fire Ins. Co.,*
   804 F.2d 9 (2d Cir. 1986)........................................................................................12

*Marvel Characters, Inc. v. Simon,*
   310 F.3d 280 (2d Cir. 2002)....................................................................................12

*Monahan v. New York City Dep't of Correction,*
   214 F.3d 275 (2d Cir. 2000)....................................................................................12

*TBK Partners LTD. v. Western Union Corp.,*
   675 F.2d 456 (2d Cir. 1982).........................................................................13, 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005).................................................................................13, 15

Defendants Rite Aid of New York, Inc. ("Rite Aid") and David Harper (collectively, with Rite Aid, "Defendants") respectfully submit this memorandum of law in support of their Motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment, based on the preclusive effect of the Class Action Settlement Agreement, Orders and Memoranda entered in the case entitled *Shirley Craig, et al. v. Rite Aid Corporation, et al.*, 4:08-cv-02317-JEJ (M.D. Pa. filed Dec. 29, 2008) ("*Craig* Action" or "Rite Aid Classification Litigation")[1], then pending in the United States District Court for the Middle District of Pennsylvania.

## INTRODUCTION

Plaintiff Frederick Donovan ("Plaintiff" or "Donovan"), a former employee of Rite Aid, claims entitlement to overtime pay under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and further alleges that he was forced to resign his employment in retaliation for his participation in the Rite Aid Classification Litigation in violation of New York City Human Rights Law and state common law. *See* Amended Complaint, at Counts I-V, appended as Exh. J to the Declaration of Patrick G. Brady ("Brady Decl.") All of Plaintiff's claims, including his retaliation claim, are barred by the final judgment approving a nationwide class settlement in the *Craig* Action.

---

[1] At the September 20, 2013 initial scheduling conference, the Court suggested that Defendants file the instant Motion for Summary Judgment on the preclusive effect of the Settlement Agreement and the court orders entered in the *Craig* Action by the Middle District of Pennsylvania, if the Plaintiff would not stipulate to the dismissal of his claims after having reviewed the relevant Settlement Agreement, Orders and Memoranda entered in the Rite Aid Classification Litigation. Defendants' Motion for Summary Judgment addresses only this legal issue. Accordingly, if this Court were to decline to enter summary judgment on the legal issue presented herein, Defendants will file a second motion for summary judgment on the merits following discovery.

1

Plaintiff's claims in the matter *sub judice*, which arise under the FLSA and New York State and City laws, involve the same underlying facts; namely, Plaintiff's alleged misclassification as an overtime exempt employee, that gave rise to the federal and state overtime claims asserted in the Rite Aid Classification Litigation. It is undisputed that Plaintiff filed a Consent to Become a Party Plaintiff and was a member of the nationwide Settlement Classes in the *Craig* Action, which settled Plaintiff's FLSA and NYLL unpaid overtime and retaliation claims.[2]  As a Settlement Class member, Plaintiff received the court-approved Settlement Notice, which clearly explained that he was required to opt-out of the Settlement Classes to avoid releasing all of his claims, asserted or unasserted, including any claims of retaliation, arising from the facts at issue in the Rite Aid Classification Litigation, expressly including any FLSA or NYLL claims.

Plaintiff did nothing in response to the Settlement Notice. He did not opt-out of the Settlement Classes and thereby remove himself from the Rite Aid Classification Litigation. He did not object to the Settlement Agreement or the release. He did not appeal from the final judgment entered in the *Craig* Action. He did nothing while Rite Aid distributed millions of dollars to those class members who timely submitted claims. Instead, Plaintiff waited nearly a year after he received the court-approved Settlement Notice, and four months after entry of final

---

[2] As explained more fully below, on July 6, 2010, a purported collective and class action was commenced by Eddie Ibea against Rite Aid in the United States District Court for the Eastern District of New York ("*Ibea* Action"). *See* Complaint (ECF No. 1 in E.D.N.Y. 10cv3075-CBA). Thereafter venue was transferred to the Southern District of New York, and Plaintiff filed a Consent to join the *Ibea* Acton on January 27, 2012. (ECF No. 97-1 in S.D.N.Y. 11cv5260-JSR). On July 3, 2012, the *Ibea* Action was transferred to the United States District Court for the Middle District of Pennsylvania and consolidated with the *Craig* Action to facilitate a consolidated settlement of the *Ibea* Action and 14 other civil actions filed by or on behalf of Rite Aid Assistant Store Managers and Co-Managers. *See* Stipulated Order of Transfer, filed July 3, 2012 (ECF No. 157 in S.D.N.Y. 11cv5260-JSR, appended as A to Brady Decl.).

judgment in the *Craig* Action, to commence this action for claims arising from the very same facts as those alleged in the Rite Aid Classification Litigation and released by the Settlement Agreement and final judgment entered in *Craig*. Having failed to object to the Rite Aid Litigation Settlement Agreement or its release, or timely opt-out of the Settlement Class, or successfully appeal from the *Craig* Court's final judgment, Plaintiff is bound by the class action Settlement Agreement, Orders and Memoranda entered in the *Craig* Action. As such, and because, as demonstrated herein, Plaintiff's FLSA and New York Labor Law claims, including his claims of retaliation, were validly released through operation of the *Craig* final judgment and Plaintiff's membership in the *Craig* Settlement Classes, Plaintiff's claims herein are barred as a matter of law and summary judgment should enter in favor of Defendants.

## RELEVANT HISTORY

### A. The Rite Aid Classification Litigation and Settlement

#### i. The *Craig* Action

The Rite Aid Classification Litigation began with the filing of the *Craig* Action in December 2008, wherein the plaintiffs challenged the propriety of Rite Aid Corporation's designation of Assistant Store Managers ("ASMs") as exempt from overtime pay requirements under the FLSA and failure to pay overtime. *See* Brady Decl. at ¶3. The *Craig* Action proceeded through extensive discovery and conditional certification of a collective action pursuant to Section 16(b) of the FLSA on December 9, 2009, (ECF No. 72 in M.D. Pa. 4:08cv2317-JEJ). *Id.* at ¶5.

In addition to the *Craig* Action, other ASM as well as Co-Manager cases were filed throughout the country asserting claims on behalf of ASMs and Co-Managers, relating to these positions being misclassified under state law and/or the FLSA as salaried, exempt positions and

seeking unpaid overtime. These additional cases included the following actions: *Ibea v. Rite Aid Corp., et al.*, No. 1:11–cv–5260 (S.D.N.Y.); *Fermin v. Rite Aid, et al.*, No. 1:08–cv–11364 (S.D.N.Y.), No. 1:12–cv–2602 (M.D.Pa.); *Torres v. Rite Aid Corp., et al.*, No. 3:09–cv–2922 (D.N.J.), No. 1:12–cv–1413 (M.D.Pa.); *Thomas v. Rite Aid of New Jersey, Inc., et al.*, No. 1:09–cv–5878 (D.N.J.), No. 12–cv–1413 (M.D.Pa.); *Knepper v. Rite Aid Corp., et al.*, No. 1:09–cv–2069 (M.D.Pa.); *Cedano v. Rite Aid Corp., et al.*, No. 2:10–cv–237 (D.Oregon), No. 1:12–cv–1259 (M.D.Pa.); *Fisher v. Rite Aid Corp., et al.*, No. 1:10–cv–1865 (M. D.Pa.); *Witty v. Rite Aid Corp., et al.*, No. 1:11–cv–12 (S.D.N.Y.), No. 1:12–cv–2512 (M.D.Pa.); *Doyon v. Rite Aid Corp.*, No. 2:11–cv–168 (D.Me.), No. 1:12–cv–1250 (M.D.Pa.); *Hough v. Rite Aid Corp., et al.*, 1:11–cv–2212 (M.D.Pa.); *Mazzantini v. Rite Aid Corp., et al.*, No. 1:11–cv–2324 (M.D.Pa.); *Quinones v. Rite Aid Corp., et al.*, No. 1:11–cv–870 (M.D.Pa.); *Laun v. Rite Aid Corp., et al.*, No. 090600789 (Pa.Ct.Com.Pl., Phila.), No. 1:12–cv–1639 (M. D.Pa.); *Eaton v. Rite Aid of Penn., et al.*, No. 090400455 (Pa.Ct.Com.Pl., Phila.), No. 1:12–cv–1258 (M.D.Pa.). *See* Brady Decl. at ¶6.

    ii.    **The *Ibea Action***

On July 6, 2010, Eddie Ibea filed a purported collective and class action lawsuit in the Eastern District of New York alleging that Rite Aid violated the FLSA and New York Labor Law by misclassifying its Co-Managers as exempt and failing to pay overtime. *Ibea v. Rite Aid Corp., et al.*, No. 1:11–cv–5260 (S.D.N.Y.).[3] Plaintiff filed a Consent to Become a Party Plaintiff in the *Ibea* Acton on January 27, 2012. *See* Consent appended as Exh. A to the Declaration of Jason Zuena ("Zuena Decl."). With the filing of his Consent, Plaintiff designated

---

[3] The *Ibea* Action was filed in the Eastern District of New York and was transferred to the Southern District of New York on the joint motion to the parties. (ECF No. 40-1 in E.D.N.Y. 10cv3075-CBA).

Klafter Olsen & Lesser, L.L.P., Hepworth Gershbaum & Roth, PLLC, and five other law firms, to represent him. (*Ibid.*). Through the filing of his Consent, Plaintiff also acknowledged that he would be bound by any settlement approved or judgment entered by the Court:

> I understand this lawsuit is being brought under the Fair Labor Standards Act. I hereby consent, agree, and opt-in to become a plaintiff herein and agree to be bound by any adjudication of this action by the Court whether favorable or unfavorable to me. I further agree to be bound by any settlement approved or judgment entered by the Court.

(*Ibid.*) On March 5, 2012, Plaintiff was deposed in the *Ibea* Action; Mathew A. Parker, Esq. of Hepworth Gershbaum & Roth, PLLC represented Plaintiff during his deposition. *See* Brady Decl. at ¶19.

### iii. The Consolidation and Court-Approved Class Settlement

After extensive discovery and motion practice in the various civil actions, the parties agreed to conduct a private mediation in the fall of 2011. The mediation process continued intermittently for several months, concluding in a settlement. *See* Brady Decl. at ¶9. To facilitate the settlement reached by the parties, on or about July 3, 2012, the *Ibea* Action, among others, was transferred to the United States District Court for the Middle District of Pennsylvania and consolidated with the *Craig* Action to bring about a consolidated settlement with the other 13 civil actions identified above. *See* Stipulated Order of Transfer, filed July 3, 2012, appended as Exh. A to the Brady Decl.

Under the terms of the settlement, Rite Aid Corporation agreed to pay up to $20.9 million in exchange for a release of claims by all class members who failed to opt-out of the settlement classes. *See* Settlement Agreement, filed June 15, 2012, appended as Exh. B to the Brady Decl. ("Settlement Agreement"). The Settlement Agreement defined "Released Parties" to include,

among others, Rite Aid Corporation, its affiliated and related entities, and its employees.[4]  *See* Settlement Agreement at §1(z), appended as Exh. B to the Brady Decl.  As such, defendants Rite Aid of New York, Inc. and David Harper are Released Parties under the Agreement.

The Settlement Agreement defined the "Settlement Classes" as the "Federal Settlement Class" and "State Settlement Classes." *See* Settlement Agreement at §1(ff), appended as Exh. B to the Brady Decl.  The Federal Settlement Class included, among others, the individual members of the *Ibea* Action, *id.* at §5(c), and the "State Settlement Classes" included those individuals who worked as Assistant Store Managers and/or Co-Managers in 31 states, including the State of New York, during certain defined periods, *id.* at §5(b), appended as Exh. B to the Brady Decl.  As an opt-in plaintiff in the *Ibea* action and former Co-Manager employed by Rite Aid in New York, Plaintiff was included in both Settlement Classes.

On June 15, 2012, the Rite Aid Classification Litigation plaintiffs filed an unopposed motion for preliminary approval of the settlement and for an order conditionally certifying the Section 16(b) FLSA collective action Federal Settlement Class and the Rule 23 proposed State Settlement Classes. *See* Brady Decl. at ¶10.

On June 18, 2012, the Middle District of Pennsylvania granted the plaintiffs' motion and entered an Order conditionally certifying the Federal and State Settlement Classes, granting preliminary approval to the proposed class action settlement, directing dissemination of the notice and claim form to the class, and approving the class release.  *See* Order Preliminarily

---

[4] The Settlement Agreement defined "Released Parties" as: "Rite Aid Corporation, all of the entities named as Defendants in the Wage-Hour Lawsuits and all of their parent(s), divisions, subsidiaries, affiliates, related companies, partnerships, joint ventures, predecessors and successors, and all of its and their directors, principals, officers, stockholders, owners, members, fiduciaries, trustees, insurers, employees, attorneys, representatives, assigns, and agents (each in their individual and corporate capacities) collectively." *See* Settlement Agreement at §1(z), appended as Exh. B to the Brady Decl.

Approving Settlement, filed June 18, 2012, appended as Exh. E to the Brady Decl. ("Preliminary Approval Order"). In relevant part, the terms of the release in the Settlement Agreement are:

> 12. <u>General Wage and Hour Release and Covenant Not to Sue</u>.
>
> (a) Upon the Effective Date, all members of the State Settlement Class who have not opted out ...shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties in the position of Assistant Store Manager and/or Co-Manager, **including without limitation all state and local claims that were asserted or could have been asserted in the Wage Hour Lawsuits[5]**, based on the allegations in them, regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order, provided this release shall not bar any claims arising after the Final Approval Order, **including retaliation claims**.
>
> (b) Upon the Effective Date, all individuals who join the *Craig* Wage-Hour Lawsuit as members of the Federal Settlement Class (including, without limitation, all individuals who have filed opt-in forms in the Wage-Hour Lawsuits and who timely return a Claim Form containing a consent to join the Action pursuant to 29 U.S.C. 216(b)) shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of ages while employed by the Released Parties in the position of Assistant Store Manager and/or Co-Manager, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of[the] Final Approval Order, provided however, that this release shall not bar any claims arising after the Final Approval Order, **including retaliation claims**.

*See* Settlement Agreement at §12 (emphasis supplied), appended as Exh. B to the Brady Decl.

---

[5] The Settlement Agreement defines the "Wage-Hour Lawsuits" to include the *Ibea* Action. *See* Settlement Agreement at 1, appended as Exh. B to the Brady Decl.

By the June 18, 2012 Order, members of the Settlement Classes who failed to seek exclusion from the Settlement Class in accordance with the terms of the Order are bound by the terms of the Settlement Agreement and enjoined from proceeding against Rite Aid Corporation, as well as Defendants herein, for claims made in the consolidated Second Amended Collective/Class Action Amended Complaint:

Requests for Exclusion from the Settlement Class

11. Any member of the Settlement Classes who wishes to be excluded ("op-out") must send an opt-out written request for exclusion to the Claims Administrator, so that it is received by the Claims Administrator at the address indicated in the Notice on or before the date twenty-one (21) days prior to the Final Approval Hearing. The opt-out written request shall fully comply with the requirements set forth in the Settlement Agreement and shall include the Settlement class member's name and the Rite Aid store(s) in which he or she worked. If, however, the Settlement Class member submits a timely Claim Form, his or her opt out request will be void.

12. Members of the Settlement Classes may not exclude themselves by filing requests for exclusion as a group or class, but must in each instance individually and personally execute a request for exclusion and timely transmit it to the Claims Administrator.

13. Any member of the Settlement Classes who does not properly and timely request exclusion shall be bound by all the terms and provisions of the Settlement Agreement, whether or not such person objected to the Settlement and whether or not such person made a claim upon, or participated in, the settlement fund pursuant to the Settlement Agreement. All members of the Settlement Classes who do not personally and timely request to be excluded are enjoined from proceeding against the Defendants for the claims made in the Second Consolidated Amended Collective/Class Action Complaint.

*See* Preliminary Approval Order ¶¶11-13, appended as Exh. E to the Brady Decl.

In accordance with the terms of the Settlement Agreement and Preliminary Approval Order, on August 16, 2012, the Rite Aid Classification Litigation Claims Administrator Garden City Group, Inc. sent a copy of the Notice, Claim Form, and Consent to Join and Release (collectively, the "Settlement Notice") to Donovan at his last known address. *See* Zuena Decl. at

8

¶3. It is undisputed Donovan received the Settlement Notice. *See* August 16, 2012 Settlement Notice produced by Plaintiff and appended as Exh. K to Brady Decl. The Settlement Notice, among other things, advised Donovan of the nature of the action, the scope of the release, the opportunity to opt-out, the right to object, the right to retain his own counsel, and the binding effect of the release and judgment on those who did not opt-out, regardless of whether they participated in the settlement. *See id.*, *see also* Exhs. B and C appended to the Zuena Decl.

The Settlement Notice also contained a clear statement that explained what Donovan needed to do to either participate in the settlement or to exclude himself from it:

> [T]o participate in the Settlement, you must send a properly completed Claim Form, Consent to Join and Release to the Claims Administrator that must be postmarked by November 23, 2012. If you fail to return a timely Claim Form, Consent to Join and Release, you will receive no money from the Settlement. Depending on what state you live in (see below), unless you "Opt-Out" of the Settlement by mailing by October 3, 2012 a written, signed statement to the Claims Administrator that you are opting out of the settlement, you will be bound by the terms of the Settlement, whether or not you submit a Claim Form, Consent to Join and Release.

*See* Notice at 3, appended as Exh. B to the Zuena Decl. The Settlement Notice additionally explained that Donovan could contact the Claims Administrator or Settlement Class Counsel if he had any questions regarding the settlement. *Id.* at 2, 8. The Claims Administrator did not receive an opt-out form, a claim form, an objection, or any other correspondence from Donovan. *See* Zuena Decl. at ¶¶4-8.

On January 7, 2013, the Middle District of Pennsylvania granted certification of the classes and collective action and final approval of the Rite Aid Classification Litigation Settlement Agreement ("Final Approval Order"). *See* Order Approving Settlement and Memorandum Decision, filed January 7, 2013, appended as Exhs. F and G to the Brady Decl. The Final Approval Order and Settlement Agreement resolved, on a global basis, litigation

against Rite Aid under both the FLSA and the laws of 31 states, including New York. *See* Order Approving Settlement at ¶¶8,10, appended as Exh. F to the Brady Decl.

By its Orders and Memoranda, the Middle District of Pennsylvania declared all members of the Settlement Classes, including Donovan, bound by all of the terms, conditions and obligations of the Settlement Agreement, and all determinations and judgments, including injunctions, in the *Craig* Action concerning the Settlement. *See* Order Approving Settlement at ¶8, appended as Exh. F to the Brady Decl. Because the Settlement Agreement defines the release period to extend up to the tenth business day following the day the Middle District of Pennsylvania issued its final approval order, the class release covers claims up to and including January 21, 2013. *See* Settlement Agreement at §12, appended as Exh. B. to the Brady Decl.

Following entry of the Final Approval Order, upon the joint stipulation of all parties advising the Middle District of Pennsylvania that the terms of the Settlement Agreement had been fully satisfied, the Middle District of Pennsylvania entered an Order of Dismissal on March 19, 2013. *See* Order of Dismissal appended as Exh. H to the Brady Decl.

**B.     This Action**

Four months after entry of the Final Approval Order on January 7, 2013, Donovan, on May 3, 2013, filed the Complaint in this action in which he alleges that when he was employed by Rite Aid as a Co-Manager he was misclassified as exempt from coverage of the overtime provisions of the FLSA and the New York Labor Law and he seeks unpaid overtime. *See* Complaint and Amended Complaint, Counts I-II, appended as Exhs. I and J to the Brady Decl. He additionally asserts claims under New York City Human Rights Law and state common law, alleging that he was retaliated against after being deposed in the *Ibea* Action on March 5, 2012, and contends that he was forced to resign his employment in July 2012, because of the alleged

retaliation for asserting claims under the FLSA and New York Labor Law. *See id.* at Counts III-V. Unbeknownst to Defendants, and two months before his alleged "forced" resignation, in or about May 2012, Plaintiff had secured another job as a store manager for Dollar Tree. *See* Plaintiff's supplemental responses to Defendants' Interrogatory No. 21 appended as Exh. M to the Brady Decl.

Nonetheless, because all of the claims Plaintiff has asserted in this action arose before January 21, 2013, they are barred by the Final Approval Order and the court-approved release incorporated into that Order. *See* Settlement Agreement, Order Approving Settlement and Memorandum Decision, appended as Exhs. B, F and G to the Brady Decl.

# ARGUMENT

## I. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF ALL DEFENDANTS ON ALL COUNTS AS A MATTER OF LAW

### A. Standard For Summary Judgment

The purpose of summary judgment is to dispose of meritless claims before engaging in a costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). Federal Rule of Civil Procedure 56 authorizes the Court to grant summary judgment for each claim or defense where it is shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Crawford v. Franklin Credit Management Corp.*, 2011 WL 1118584, at *9-10 (S.D.N.Y. Mar. 23, 2011). Such is the case here because all of Plaintiff's claims arose before January 21, 2013, when the Middle District of Pennsylvania finally adjudged those claims to be fully and forever released and enjoined Plaintiff from asserting them.

### B. Plaintiff is Precluded From Asserting His Claims Under the *Craig* Final Approval Order and Court-Approved Settlement Agreement

#### i. The Doctrine of *Res Judicata* Bars Plaintiff's Claims

Pursuant to the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine applies where (1) the earlier action resulted in an adjudication on the merits, (2) the party asserting the claim, or those in privity with the party, were parties to the earlier action, and (3) the claim asserted in the later action was or could have been asserted in the earlier action. *Monahan v. New York City Dep't of Correction*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).

In the class action context, *res judicata* precludes successive litigation by any class member, including absent and unnamed class members, where the class is accorded due process in the underlying proceeding. *See Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940)). *Res judicata* applies with equal force when the prior class action judgment was the result of a settlement. *TBK Partners LTD. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). "Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so." *Anderson v. Beland*, 672 F.3d 113, 129 (2d Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 115 (2d Cir.) (stating that a class member "was required to opt out at the class notice stage if it did not wish to be bound" by a class settlement agreement), *cert. denied*, 544 U.S. 1044 (2005); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1302 (2d Cir. 1990) (stating that if a party "could not have properly opted out of the mandatory class, it is bound by the class settlement if it is upheld, as are all other members of the class")).

The principles of *res judicata* are satisfied here, as Plaintiff filed a Consent to Become a Party Plaintiff, was a member of the nationwide Settlement Classes in the *Craig* Action, and was afforded due process in that he received court-approved notice of the settlement and an opportunity to be heard, *i.e.*, object or opt-out. Plaintiff opted-in to the *Ibea* Action in which he alleged violations of the FLSA and New York Labor Law in that he was misclassified as a salaried, exempt employee and denied overtime compensation. Plaintiff was represented in that matter by several attorneys from six different law firms who vigorously litigated the FLSA and state law overtime cases, conducted extensive and lengthy mediation, and secured a $20.9 million settlement, which included Plaintiff. When he opted-in, Plaintiff expressly acknowledged that he would be bound by the terms of any settlement approved or judgment

entered by the Court. *See* Consent appended as Exh. A Zuena Decl. As a member of the Federal and State Settlement Classes, Plaintiff received the court-approved Settlement Notice. *See* Zuena Decl. at ¶3; *see also* August 16, 2012 Settlement Notice produced by Plaintiff and appended as Exh. K. to the Brady Decl.

The Settlement Notice specifically advised Plaintiff that his FLSA and New York Labor Law claims, asserted and unasserted, arising from the facts at issue in the Rite Aid Classification Litigation would be released unless he executed and returned an "opt-out" form. *See* Settlement Notice appended as Exh. B to the Zuena Decl. The notice also instructed Plaintiff to contact Settlement Class Counsel or the Claims Administrator if he had any questions about the settlement, *id.*, and repeatedly assured Plaintiff that his participation in the litigation or settlement would not affect his employment with Rite Aid:

### Introduction

\* \* \*

Rite Aid is encouraging all Settlement Class Members to participate in this Settlement. The law prohibits retaliation against current or former employees who participate in settlements.

\* \* \*

**8. No Retaliation:**

Rite Aid is encouraging all class members to participate in the Settlement. Whether you are a current or former Rite Aid employee who is eligible for this Settlement, your decision as to whether or not to submit a Claim Form, Consent to Join and Release will in no way affect your employment with Rite Aid. **Rite Aid is prohibited by law from taking any action against employees who join the Action or participate in the Settlement.**

*See* Settlement Notice at 3, 7 (emphasis supplied), appended as Exh. B to the Zuena Decl.

In light of these indisputable facts, and because the Settlement Agreement included a release of all claims by all Federal and State class members, including claims of retaliation[6], and because the Settlement Notice clearly identified the consequence of taking, or not taking, action in response to the notice[7], *res judicata* bars Plaintiff's claims under the FLSA and New York Labor Law for unpaid overtime and his claims of retaliation for participation in the *Ibea* Action, and they should be dismissed as a matter of law.

### ii. The Doctrine Of Release Bars Plaintiff's Claims

Plaintiff's claims should be dismissed as a matter of law for the additional, independent reason that the court-approved release contained in the Settlement Agreement and incorporated into the Final Approval Order entered in the *Craig* Action covers the pre-January 21, 2013 claims Plaintiff asserts in this litigation. *See* Defendants' Statement of Material Facts at ¶¶16, 26-27.

It is well-settled that a release incorporated into an order approving a class action settlement acts as a bar to subsequent litigation based on the release of claims. *See Wal-Mart Stores*, 396 F.3d at 107 (citing *TBK Partners*, 675 F.2d at 460); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001). Although, as one court acknowledged, "it may seem anomalous at first glance that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment," courts have adopted such a rule because it "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Prudential Insurance*, 261 F.3d at 366 (quoting *TBK Partners*, 675

---

[6] *See* Defendants' Statement of Material Facts at ¶16.

[7] *See* Defendants' Statement of Material Facts at ¶¶20-21.

F.2d at 460). Indeed, to permit individual class members to relitigate claims that are based on the same facts as in the settled class action "would seriously undermine the possibility for settling any large, multi district class action." *Id.* at 367.

As such, in *TBK Partners*, the Second Circuit rejected arguments by members of a shareholder class action in a securities case who challenged a settlement order that barred class members from pursuing state appraisal claims. 675 F.2d at 4459-60. The objectors argued that the appraisal claims could not be released through the settlement because "appraisal rights are individual statutory rights personal to class members that are inappropriate for adjudication in a class action and had not matured by the time the class action had commenced." *Id.* at 460. The Second Circuit disagreed, holding that, "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Id.* at 460. The *Craig* court-ordered release of claims is precisely the type of release authorized by this precedent.

By its express terms[8], it releases any or all state or federal claims "that were asserted or could have been asserted in the Wage Hour Lawsuits … regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order [*i.e.*, January 21, 2013], provided this release shall not bar any claims arising after the Final Approval Order, **including retaliation claims**." *See* Settlement Agreement at §12, appended as Exh. B to the Brady Decl. (emphasis supplied). Here, Donovan is asserting the very same factual predicate, *i.e.*, his alleged misclassification as a salaried

---

[8] *See* Defendants' Statement of Material Facts at ¶16.

16

employee exempt from the overtime requirements of the FLSA and New York Labor Law, that was asserted in the Rite Aid Classification Litigation. Plaintiff's FLSA and New York State and City statutory and common law claims, including his retaliation claim[9], all arose well-before January 21, 2013[10], and, therefore, are encompassed by the court-approved release. There can be no question that the FLSA and state law claims he asserts in this action were validly released.

## CONCLUSION

For the foregoing reasons, Defendants Rite Aid of New York, Inc. and David Harper respectfully submit that the Court should dismiss Plaintiff Frederick Donovan's claims in their entirety and with prejudice.

Dated: October 23, 2013

s/Patrick G. Brady
Patrick G. Brady, Esq.
pbrady@ebglaw.com
**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, New York 10177-1211
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 642-1900
Fax: (973) 642-0099

**Attorneys for Defendants**
Rite Aid of New York, Inc. and David Harper

---

[9] Plaintiff contends he was retaliated against because he joined the Rite Aid Classification Litigation and testified at his deposition in the *Ibea* Action on March 5, 2012. *See* Amended Complaint appended as Exh. J to the Brady Decl. The only retaliation claims excepted from the scope of the release are those that occur after the Effective Date of the release, *i.e.*, January 21, 2013.

[10] Because the Final Approval Order was entered on January 7, 2013, the court-approved release covers claims up to and including January 21, 2013. *See* Settlement Agreement at §12.
In his Amended Complaint, Plaintiff alleges that he was forced to resign his employment "in or about July 2012," which is 6 months before the Middle District of Pennsylvania entered the Final Approval Order.