USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 1 4 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

FREDERICK DONOVAN,

      Plaintiff,

    -v-

RITE AID OF NEW YORK INC. and
DAVID HARPER,

      Defendants.
------------------------------------------------------------X

13 Civ. 2937 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

On May 2, 2013, plaintiff Frederick Donovan filed a complaint seeking overtime pay under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and alleging that defendant indefinitely suspended him in retaliation for participation in a class action lawsuit in violation of New York City Human Rights law and state common law. (Am. Compl. ¶¶ 31–72, ECF No. 19.) On October 23, 2013, defendant moved for summary judgment based on the preclusive effect of the settlement agreement in that class action. (ECF No. 32.) For the following reasons, defendant's motion is GRANTED.

      I.  BACKGROUND

The Rite Aid Classification Litigation began in December 2008 with the filing of <u>Craig, et al. v. Rite Aid Corp., et al.</u>, No. 08 Civ. 2317 (M.D. Pa. Dec. 29, 2008) ("the <u>Craig</u> action"). That lawsuit challenged Rite Aid Corporation's designation of Assistant Store Managers ("ASMs") as exempt from overtime pay requirements

under the FLSA. (Defs.' Statement of Material Facts ("Defs.' 56.1") ¶ 1; Pl.'s Statement Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 1.)

On July 6, 2010, Eddie Ibea filed a class-action lawsuit alleging that Rite Aid violated the FLSA and NYLL by misclassifying its co-managers as exempt and failing to pay them overtime ("the Ibea action"). (Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.) Plaintiff, who worked for Rite Aid as an Assistant/Co-Manager (Compl. ¶ 10), signed and submitted a Consent to Become a Party Plaintiff form in that action on January 25, 2012. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5.) That form acknowledged that plaintiff would be "bound by any settlement approved or judgment entered by the Court." (Defs.' 56.1 ¶¶ 5–6; Pl.'s 56.1 ¶¶ 5–6.)

The parties agreed to conduct a private mediation in the fall of 2011, and ultimately agreed to a settlement. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.) To facilitate the settlement, on or about July 3, 2012, the Ibea action was transferred to the District Court for the Middle District of Pennsylvania and consolidated with the Craig action. (Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 9.)

Under the terms of the settlement, defendant Rite Aid Corporation agreed to pay $20.9 million in exchange for a release of claims by all class members who failed to opt out of the State Settlement Class or Federal Settlement Class. (Brady Decl. Ex. B ("Settlement Agreement") ¶¶ 6(a), 12(a)–(b), ECF No. 35.) The State Settlement Class includes the individuals who worked for Rite Aid as Assistant Store Managers and/or Co-Managers, and the Federal Settlement Class includes

the members of the Ibea action. (Id. ¶¶ 5(b)–(c).) The settlement agreement includes the following terms in the release:

> 12(a) Upon the Effective Date, all members of the State Settlement Class who have not opted out . . . shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties in the position of Assistant Store Manager and/or Co-Manager, including without limitation all state and local claims that were asserted or could have been asserted in the Wage-Hour Lawsuits, based on the allegations in them, regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order, provided however that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.
>
> 12(b) Upon the Effective Date, all individuals who join the Craig Wage-Hour Lawsuit as members of the Federal Settlement Class . . . shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages while employed by the Released Parties, in the position of Assistant Store Manager and/or Co-Manager, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of [the] Final Approval Order, provided however, that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.

(Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16.)

The settlement agreement defined "Released Parties" to include Rite Aid Corporation, all of its divisions and subsidiaries, and all of its employees, and defined the "Wage-Hour Lawsuits" to include the Craig and Ibea actions. (Brady Decl. Ex. B p. 1 & ¶ 1(z)).

On January 7, 2013, the Middle District of Pennsylvania granted certification of the classes and final approval of the settlement agreement. (Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.)

On May 3, 2013, four months later, plaintiff filed the complaint in this action. (ECF No. 1.) Plaintiff filed an amended complaint on September 19, 2013. (ECF No. 19.) That complaint seeks overtime pay under the FLSA and NYLL and alleges that defendant indefinitely suspended him in retaliation for participation in the Rite Aid Classification Litigation in violation of New York City Human Rights law and state common law. (Am. Compl. ¶¶ 31–72.)

On October 23, 2013, defendants moved for summary judgment as to all counts. (ECF No. 32.) Defendants argue that plaintiff is precluded from asserting his claims under the Craig settlement agreement. (See Mem. of L. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mot.") 12–17, ECF No. 33.)

## II.  STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and

resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

III. <u>DISCUSSION</u>

The court-approved release contained in the settlement agreement and incorporated into the final approval order entered in the Rite Aid Classification Litigation covers all claims that plaintiff has asserted in this litigation. Therefore, the Court grants defendants' motion for summary judgment on all counts.[1]

The law is well-established that "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 108 (2d Cir. 2005) (citations omitted). "[I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action . . . ." <u>TBK Partners, Ltd. v. Western Union Corp.</u>, 675 F.2d 456, 460 (2d Cir. 1982)).

Here, the settlement agreement entered in the <u>Craig</u> litigation releases all of plaintiff's claims. The settlement agreement releases all state and federal claims "that were asserted or could have been asserted in the Wage Hour Lawsuits . . . regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order" (<u>i.e.</u>, January 21, 2013). (Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16.) In the first two counts of

---

[1] Defendants also argue that <u>res judicata</u> precludes plaintiff from asserting his claims under the settlement agreement (<u>see</u> Defs.' Mot. 12–15), and that plaintiff has abandoned his FLSA and NYLL claims because he did not oppose defendants' motion with respect to dismissal of those claims. (<u>See</u> Defs.' Reply Mot. for Summ. J. ("Defs.' Reply") 3, ECF No. 42.) Because the release is dispositive of all of plaintiff's claims in this case, the Court need not reach those alternative bases for resolving this motion for summary judgment.

his complaint, plaintiff asserts that defendants misclassified him as a salaried employee exempt from the overtime requirements of the FLSA and the NYLL. (Am. Compl. ¶¶ 31–51.) That is exactly the claim asserted in the Ibea action, which plaintiff joined, which was consolidated with the Craig action, and which was settled in January 2013. (Defs.' 56.1 ¶¶ 4, 9, 24; Pl.'s 56.1 ¶¶ 4, 9, 24.) Plaintiff's claim arose before January 21, 2013, 10 business days after the date of entry of the Final Approval Order on January 7. (See Am. Compl. ¶ 29 (alleging that plaintiff was forced to resign in July 2012).) Plaintiff's overtime claims under both the FLSA and the NYLL are thus barred by the release.

The release also forecloses the third and fourth counts of plaintiff's complaint, which allege that plaintiff was indefinitely suspended and constructively terminated in retaliation for joining the Craig class action and testifying in that lawsuit. (Am. Compl. ¶¶ 52–66.) There is no genuine dispute of material fact as to whether the settlement agreement encompassed retaliation claims or that plaintiff could have brought his claims as part of that class action.

Plaintiff first argues that he could not have brought his retaliation claims with the class action suit, as the Rite Aid Classification Litigation asserted only causes of action under the FLSA and NYLL. (Pl.'s Mem. of L. Opposing Def.'s Summ. J. Mot. ("Pl's Opp.") 4, ECF No. 39.) As an initial matter, whether or not plaintiff could have brought his retaliation claims as part of the class action is irrelevant. It is well-settled that "class action releases may include claims not presented and even those which could not have been presented as long as the

released conduct arises out of the 'identical factual predicate' as the settled conduct." Wal-Mart, 396 F.3d at 107 (quoting TBK Partners, 675 F.2d at 460). Here, plaintiff's claims arise out of the same "factual predicate" as the settled conduct—in fact, they relate to the settlement itself—and may therefore be validly released. See Wal-Mart, 396 F.3d at 107. Moreover, plaintiff is incorrect that he could not have brought his claims in the Classification Litigation. The FLSA and NYLL both contain anti-retaliation provisions. See 29 U.S.C. § 215(a)(3); N.Y. Labor Law § 215(1)(a). Because he was forced to resign in July 2012, plaintiff could have brought retaliation claims pursuant to those provisions as part of the Classification Litigation, which did not settle until January 2013. (Am. Compl. ¶ 29.)

Plaintiff also argues that the release contained in the settlement agreement covers only FLSA and NYLL wage-and-hour claims, not retaliation claims. (Pl.'s Opp. 1–2, 5 ("[T]he settlement agreement does not mention non-wages claims . . . .").) Plaintiff is again incorrect. Under the terms of the release contained in the settlement agreement, all class members agree to "discharge the Released Parties [i.e., defendants] from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations" of relevant state and federal law. (Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16 (emphasis added).) Plaintiff emphasizes that section 13 of the settlement agreement forbids class members from filing a lawsuit alleging "Wage and Hour Claims," as though the agreement were meant to exclude retaliation claims. (Pl.'s 56.1 ¶ 16 (emphasis

8

added).) However, the settlement agreement defines "Wage and Hour Claims" broadly and comprehensively as including "without limitation" "any and all suits, actions, causes of action, claims, or demands based on putative violations of the Fair Labor Standards Act, as well as any state or local law." (Brady Decl. Ex. B ¶ 1(jj).)

If there were any doubt that this extremely broad release includes plaintiff's retaliation claims in the instant case, two further aspects of the agreement confirm that to be the case as a matter of law.

First, the settlement agreement expressly excluded "any claims arising after the Final Approval Order, <u>including retaliation claims</u>." (Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16 (emphasis added).) There would be no need for this express exception if claims of retaliation arising <u>before</u> the entry of the final approval order were excluded from and released by the settlement agreement.

Second, the settlement agreement's explicit references to retaliation make clear that such claims were included within the scope of the settlement. The settlement agreement stated that "Rite Aid will not retaliate against any Participating Settlement Class Member," and obligated class counsel to "promptly notify Rite Aid's Counsel of any complaints by Settlement Class Members about any conduct by a Rite Aid employee at the Store Manager level or higher regarding this obligation." (Brady Decl. Ex. B ¶ 18.) The settlement notice further notified plaintiff himself, as a class member, that "Rite Aid is prohibited by law from taking any action against employees who join the Action or participate in the Settlement" (Zuena Decl. Ex. B, at 7, ECF No. 34).

There is no genuine dispute of material fact here. As a matter of law, the settlement agreement in the Rite Aid Classification Litigation, of which plaintiff was an opt-in member, releases all the claims alleged in his complaint—both the FLSA and NYLL wage-and-hour claims actually asserted in the Craig and Ibea actions, and the retaliation claims that plaintiff could have brought and that were included in the scope of the settlement.

## IV.   CONCLUSION

For these reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 32 and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         November 14, 2013

*K. B. Forrest*
KATHERINE B. FORREST
United States District Judge